1

2

3

4

5

6

7                     IN THE UNITED STATES DISTRICT COURT

8                    FOR THE EASTERN DISTRICT OF CALIFORNIA

9   JULIANA COMBS,

10              Plaintiff,                    No. CIV S-06-2530 GGH

11        vs.

12
    MICHAEL J. ASTRUE,                        ORDER
13  Commissioner of
    Social Security,
14
                Defendant.
15  _____/

16              Plaintiff seeks judicial review of a final decision of the Commissioner of Social

17  Security ("Commissioner") denying her applications for Supplemental Security Income ("SSI")

18  and Disability Insurance Benefits ("DIB") under Titles XVI and II of the Social Security Act

19  ("Act").[1]  For the reasons that follow, plaintiff's Motion for Summary Judgment is DENIED, the

20  Commissioner's Cross Motion for Summary Judgment is GRANTED, and the Clerk is directed

21  to enter judgment for the Commissioner.

22  BACKGROUND

23              Plaintiff, born June 18, 1969, applied on January 5, 2004 for disability benefits,

24  with a protective filing date of December 15, 2003.  (Tr. at 70, 73, 29.)  Plaintiff alleged she was

25  _____

26        [1]  The case is before the undersigned pursuant to 28 U.S.C. § 636(c) (consent to proceed
    before a magistrate judge).

                                                1

1  unable to work due to schizoaffective disorder, obsessive compulsive disorder, paranoia, poor

2  memory, and anxiety disorder.  (Tr. at 144.)

3          In a decision dated October 26, 2005, ALJ James M. Mitchell determined plaintiff

4  was not disabled.  The ALJ made the following findings:[2]

5          1.      The claimant meets the nondisability requirements for a
                   period of disability and Disability Insurance Benefits set
6                  forth in Section 216(i) of the Social Security Act and is
                   insured for benefits through the date of this decision.
7

8          2.      The claimant has not engaged in substantial gainful activity
                   since the alleged onset of disability.

9          3.      The claimant's a [sic] schizoaffective disorder, an
                   obsessive-compulsive disorder, and a cannabis induced
10                 anxiety disorder are considered "severe" based on the
                   requirements in the Regulations 20 CFR §§ 404.1520(c)
11                 and 416.920(c).

12
          [2] Disability Insurance Benefits are paid to disabled persons who have contributed to the
13  Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to
    disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in
14  part, as an "inability to engage in any substantial gainful activity" due to "a medically
    determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).
15  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.
    See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S.
16  137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:
                   Step one:  Is the claimant engaging in substantial gainful
17  activity?  If so, the claimant is found not disabled.  If not, proceed
    to step two.
18                 Step two:  Does the claimant have a "severe" impairment?
    If so, proceed to step three.  If not, then a finding of not disabled is
19  appropriate.
                   Step three:  Does the claimant's impairment or combination
20  of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
    404, Subpt. P, App.1?  If so, the claimant is automatically
21  determined disabled.  If not, proceed to step four.
                   Step four:  Is the claimant capable of performing his past
22  work?  If so, the claimant is not disabled.  If not, proceed to step
    five.
23                 Step five:  Does the claimant have the residual functional
    capacity to perform any other work?  If so, the claimant is not
24  disabled.  If not, the claimant is disabled.
    Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
25          The claimant bears the burden of proof in the first four steps of the sequential evaluation
    process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the
26  burden if the sequential evaluation process proceeds to step five.  Id.

4.    These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.    The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6.    The claimant has the residual functional capacity to lift/carry 20 pounds occasionally and 10 pounds frequently. She can sit/stand/walk for 6 hours in an 8 hour workday. She experiences a slight to moderate level of pain.  She has a slight limitation in her ability to pay attention and concentrate and a slight limitation in her ability to understand and remember.  She should have limited contact with the public.  She has the ability to work with only occasional supervision.  She retains the understanding, memory, sustained concentration, persistence, social interaction, and adaptation to perform simple, routine, repetitive tasks.

7.    The claimant's past relevant work as file clerk did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR §§ 404.1565 and 416.965).

8.    The claimant's medically determinable schizoaffective disorder, obsessive-compulsive disorder, and cannabis induced anxiety disorder do not prevent the claimant from performing her past relevant work.

9.    The claimant is a "younger individual between the ages of 18 and 44" (20 CFR §§ 404.1563 and 416.963).

10.   The claimant has "more than a high school (or high school equivalent) education" (20 CFR §§ 404.1564 and 416.964).

11.   The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR §§ 404.1568 and 416.968).

12.   The claimant has the residual functional capacity to perform a significant range of light work (20 CFR §§ 404.1567 and 416.967).

13.   In the alternative, using Medical-Vocational Rule 202.21 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform.  Examples of such jobs include work as a fast food worker, with 23,500 jobs in the State of California.

1          14.    The claimant was not under a "disability," as defined in the
                  Social Security Act, at any time through the date of this
2                 decision (20 CFR §§ 404.1520(g) and 416.920(g)).

3    (Tr. at 35-36.)

4    ISSUES PRESENTED

5          Plaintiff has raised the following issues: A.  Whether the ALJ Erred in Concluding

6    that Plaintiff's Past Work as File Clerk Constituted Past Relevant Work; B.  Whether the

7    Vocational Expert's Testimony Fails to Support the ALJ's Finding that Plaintiff Can Work as a

8    File Clerk or Fast Food Worker; and C.  Whether the ALJ Failed to Properly Evaluate Plaintiff's

9    Subjective Complaints.

10   LEGAL STANDARDS

11         The court reviews the Commissioner's decision to determine whether (1) it is

12   based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

13   the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).

14   Substantial evidence is more than a mere scintilla, but less than a preponderance.  Saelee v.

15   Chater, 94 F.3d 520, 521 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might

16   accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct.

17   1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206

18   (1938).  "The ALJ is responsible for determining credibility, resolving conflicts in medical

19   testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir.

20   2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

21   interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

22   Thomas v. Barnhart, 278  F.3d 947, 954 (9th Cir. 2002).

23   \\\\\

24   \\\\\

25   \\\\\

26   \\\\\

4

1   ANALYSIS

2         A.  Whether the ALJ Erred in Concluding that Plaintiff's Past Work as File Clerk

3 Constituted Past Relevant Work

4         Plaintiff contends that the ALJ erred in finding that her past work as file clerk

5 qualified as substantial gainful activity because she only performed it for about three months.

6 "'Substantial gainful activity' is:  ... work activity that 'involves doing significant physical or

7 mental activities' on a full or part-time basis, and is the 'kind of work usually done for pay or

8 profit, whether or not a profit is realized.'"  20 C.F.R. §§ 416.972(a) & (b).  Byington v. Chater,

9 76 F.3d 246, 248 (9th Cir. 1995) citing Katz v. Sec. HHS, 972 F.2d 290, 292 (9th Cir. 1990).

10

11         The concept of substantial gainful activity involves the amount of
compensation and the substantiality and gainfulness of the activity

12         itself.  20 C.F.R. § 404.1532(b); Chicager v. Califano, 574 F.2d
161, 163 (3d  Cir.1978).  The mere existence of earnings over the

13         statutory minimum is not dispositive.  Chicager, 574 F.2d at 163.
However, there is a presumption of substantial gainful employment

14         if the applicant earns over the amount specified in the guidelines.
20 C.F.R. §§ 404.1574(b)(2), 404.1575(b)(2); Josefowicz v.

15         Heckler, 811 F.2d 1352, 1356 (10th Cir.1987).  The claimant may
rebut a presumption based on earnings with evidence of his

16         inability to be self-employed or to perform the job well, without
special assistance, or for only brief periods of time.  Anderson v.

17         Heckler, 726 F.2d 455, 456 (8th  Cir.1984).

18 Keyes v. Sullivan, 894 F.2d 1053, 1056 (9th Cir. 1990).

19         In this case, the ALJ found that plaintiff could do her past relevant work as a file

20 clerk based on the vocational expert's testimony that she could do this work either as she had

21 performed it, or as it was performed in the national economy.  (Tr. at 33.)  Plaintiff disagrees that

22 these jobs constitute substantial gainful activity because her earnings did not reach SGA levels

23 and because the work was sporadic in lasting only about three months through a temporary

24 agency.

25         It is true that sporadic substantial gainful activity during the period of alleged

26 disability might permit ignoring of the abortive work.  See Gatliff v. Commissioner of Social

1  Sec. Admin., 172 F.3d 690, 692 (9th Cir. 1999).  In <u>Gatliff</u>, the court found that two months was

2  not a significant period of time and that eleven months is a significant period.  <u>Id.</u> at 694, 693.

3          Clearly, plaintiff's work as file clerk did not last long enough to be considered a

4  significant period.  (Tr. at 110.)[3]

5          Assuming arguendo that this work lasted long enough to be significant, it still did

6  not earn enough to qualify as substantial gainful activity.  No one disputes that plaintiff earned

7  $1,810.25 for approximately three months of work as a file clerk, most likely in 2000.  (Tr. at

8  76.)  Her earnings were therefore $603.42 per month.  This amount indicates she is well below

9  the dollar limit that will create a presumption of substantial gainful employment.  <u>See</u> 20 C.F.R.

10  §§ 404.1574(b)(2) & 416.974(b)) (more than $700.00/month for years July, 1999 through

11  December, 2000, are earnings that ordinarily show substantial gainful activity).

12          Both the longevity of this job and its earnings indicate there is no presumption of

13  SGA.  Defendant argues against permitting plaintiff raising this issue at this late date, when she

14  had counsel throughout the proceedings and failed to object to the ALJ's characterization of the

15  file clerk job as past relevant work.  Objection on these grounds would have made no difference

16  to the outcome as the ALJ found in the alternative that plaintiff could perform other work at step

17  five.  <u>See</u> discussion *infra*.  Remand is not required on this basis for the same reason, and any

18  error by the ALJ was harmless.  An error which has no effect on the ultimate decision is

19  harmless.  <u>Curry v. Sullivan</u>, 925 F.2d 1127, 1121 (9th Cir. 1990).

20          B.  <u>Hypothetical to Vocational Expert</u>

21          Plaintiff asserts that the hypothetical to the vocational expert failed to support the

22  ALJ's finding that plaintiff can work as a file clerk or fast food worker.

23  \\\\\

24

---

25      [3] Plaintiff completed a work history report stating that she performed this job from June,
   2001 to September, 2001, but other records indicate plaintiff worked for Kelly Services for the
26  same period of time in 2000.  (<u>Id.</u> at 76.)

1          Hypothetical questions posed to a vocational expert must include all the

2  substantial, supported physical and mental functional limitations of the particular claimant.

3  Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir.1995); see Light v. Social Sec. Admin., 119 F.3d

4  789, 793 (9th Cir.1997).  If a hypothetical does not reflect all the functional limitations, the

5  expert's testimony as to available jobs in the national economy has no evidentiary value.

6  DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  But see Thomas v. Barnhart, 278 F.3d

7  947 (9th Cir. 2002) (approving hypothetical directing VE to credit specific testimony which VE

8  had just heard); Matthews v. Shalala, 10 F.3d 678 (9th Cir. 1993) (failing to include all

9  limitations in a hypothetical may be harmless error if the ALJ's conclusions are supported by

10  other reliable evidence).  While the ALJ may pose to the expert a range of hypothetical questions,

11  based on alternate interpretations of the evidence, substantial evidence must support the

12  hypothetical which ultimately serves as the basis for the ALJ's determination.  Embrey v. Bowen,

13  849 F.2d 418, 422 (9th Cir. 1988).[4]

14          The file clerk job, although not constituting substantial gainful activity for

15  purposes of determining whether it qualified as past work, is analyzed differently under step five.

16  At the hearing, the vocational expert testified that plaintiff can do this job.  He testified that the

17  file clerk job did not involve heavy personal interaction.  (Tr. at 283.)  Further, it fit within the

18  hypothetical posed to the expert which was light work with the following restrictions:

19          She is slightly limited in attention, concentration, understanding,
           and memory.  Vision, hearing, reaching, fine and gross
20          manipulative abilities are intact and unlimited.  She is slightly
           limited in the ability to do a simple routine repetitive task,
21          environmentally, no restrictions.  She would be limited in contact
           with the public to six hours or less per shift, would require only
22          occasional supervision and have a physical pain level described as
           light to moderate.
23  (Tr. at 283.).

24  ─────────────────────

25      [4]  Similarly, "[t]he ALJ is not bound to accept as true the restrictions presented in a
hypothetical question propounded by a claimant's counsel."  Magallanes v. Bowen, 881 F.2d
26  747, 756 (9th Cir. 1989).  The ALJ is free to accept them if they are supported by substantial
evidence or reject them if they are not.  Id. at 756-757.

1        The VE's testimony is clear in permitting plaintiff to do this past work.  The

2    question of substantial gainful activity is important at step five in order to determine whether

3    there exist significant numbers of jobs in the national economy.  Burch v. Barnhart, 400 F.3d

4    676, 679 (9th Cir. 2005).  It is presumed that if this job has been selected by the VE that it is

5    considered substantial and gainful employment.  The reasons why this work did not reach SGA

6    levels at step four do not apply here.  Plaintiff would be doing this job long term and would earn

7    more if she were not working at a temporary employment agency as she did previously.

8        The above-mentioned hypothetical was relied upon by the ALJ to determine

9    plaintiff could do the job of file clerk and fast food worker.  The VE testified that she could be a

10   file clerk and a fast food worker, but in regard to this latter job, about half of the previously

11   stated 47,000 jobs would be eliminated due to these aforementioned limitations.  (Id. at 282-83.)

12       Plaintiff argues that this hypothetical to the expert was not complete as it did not

13   encompass the limitation placed by the state agency medical consultant that plaintiff had

14   moderate difficulties in maintaining concentration, persistence or pace.  (Tr. at 185.)  When this

15   limitation was placed before the vocational consultant, plaintiff contends, he testified that there

16   were no jobs plaintiff could do.  (Id. at 284, 286.)

17       In forming his hypothetical, the ALJ gave substantial weight to the DDS opinion,

18   yet determined that plaintiff had only a slight limitation in ability to concentrate and pay

19   attention.  (Id. at 33, 32.)  The psychiatric review technique form completed by the DDS

20   physician found that plaintiff had moderate difficulties in maintaining concentration, persistence,

21   or pace, (id. at 185), yet the mental residual functional capacity assessment form, completed by

22   the same physician, found that plaintiff was not significantly limited in her ability to maintain

23   attention and concentration for extended periods.  (Id. at 171.)  An ALJ may properly rely upon

24   only selected portions of a medical opinion while rejecting other parts.  See, e.g., Magallanes v.

25   Bowen, 881 F.2d 747, 753 (9th Cir. 1989) (ALJ's supported reliance on selected portions of

26   conflicting opinion constitutes substantial evidence).  However, such selective reliance must be

8

1   consistent with the medical record as a whole. <u>See</u>, e.g., <u>Edlund v. Massanari</u>, 253 F.3d 1152,

2   1159 (9th Cir. 2001) (ALJ cannot reject portion of medical report that is clearly reliable).

3   Furthermore, the ALJ was not required to articulate reasons to explain why he relied on the

4   portion of the opinion indicating only a slight limitation in these areas because he did not reject

5   the opinion of the DDS doctor. "It is not necessary to agree with everything an expert witness

6   says in order to hold that his testimony contains 'substantial evidence.'" <u>Magallanes v. Bowen</u>,

7   881 F.2d 747, 753 (9th Cir. 1989), citing <u>Russell v. Bowen</u>, 856 F.2d 81, 83 (9th Cir.1988)

8   (citation omitted).

9         The ALJ's reliance on the least restrictive assessment of maintaining attention,

10   concentration, persistence and pace is consistent with the remainder of the record. The ALJ also

11   gave substantial weight to the opinion of Dr. Behniwal, a consulting psychiatrist, who did not

12   specifically address plaintiff's ability to maintain concentration, persistence or pace, but opined

13   that despite a diagnosis of schizoaffective disorder and obsessive compulsive disorder,[5]

14   plaintiff's problems were treatable and her likelihood of recovery within the next twelve months

15   was fair. (<u>Id.</u> at 169.) In regard to her functional ability, the psychiatrist stated that she did not

16   have any drug problems, could do simple and repetitive, as well as detailed and complex tasks,

17   could accept instructions from supervisors and get along with coworkers and the public, could

18   perform activities on a consistent basis without special supervision, and could maintain regular

19   attendance and complete a normal work week. She might have difficulty, however, in handling

20   usual workplace stress due to her depression and lack of interest. (<u>Id.</u> at 169.)

21   \\\\\

22

23       [5] Plaintiff's GAF was 63 at this time. GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."

24   Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed.1994) ("DSM IV"). According to the DSM IV, A GAF of 61-70 indicates "some mild symptoms (e.g., depressed

25   mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has

26   some meaningful interpersonal relationships." DSM IV at 32.

1    These descriptors of plaintiff's functional capacity, although not specifically

2  mentioning concentration, persistence or pace, are similar enough to these characteristics to

3  permit an inference that Dr. Behniwal most likely would opine that plaintiff did not have a

4  difficulty in these areas.  Therefore, substantial evidence supports the ALJ's decision not to

5  include this particular limitation in the hypothetical.

6    Plaintiff also contends that the hypothetical failed to include limited contact with

7  the public, which would have eliminated the job of fast food worker.  Pl.'s Ex. A.  The

8  description of this job in the DOT[6] lists "significant" contact with people as a requirement.  (Id.)

9  The hypothetical as set forth above does limit plaintiff to six hours or less contact with the

10 public.  In response, the expert stated that plaintiff could only do half of the previously

11 mentioned 47,000 fast food worker jobs.  (Tr. at 283.)  Plaintiff was represented by counsel at the

12 hearing who failed to question the VE about this response.  (Tr. at 286.)

13   The medical evidence of record supports this stated limitation in public contact.

14 Dr. Behniwal specifically found that plaintiff could interact with the public without limitation.

15 (Tr. at 169.)  The DDS doctor found that plaintiff was not significantly limited in any form of

16 social interaction, including interacting appropriately with the general public.  (Id. at 172.)  In

17 regard to maintaining social functioning, which is a similar function but not as specific to the

18 claim made by plaintiff, this DDS physician found that plaintiff was only mildly limited.  (Id. at

19 185.)  Therefore, the ALJ's limitation of six hours of interaction with the public was more

20 protective of plaintiff's abilities than the medical evidence required.

21 \\\\\

22

23   [6]  The United States Dept. of Labor, Employment & Training Admin., Dictionary of
Occupational Titles (4th ed. 1991), ("DOT") is routinely relied on by the SSA "in determining
24 the skill level of a claimant's past work, and in evaluating whether the claimant is able to
perform other work in the national economy."  Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir.
25 1990).  The DOT classifies jobs by their exertional and skill requirements.  It is used by the SSA
to classify jobs as skilled, unskilled, or semiskilled.  (Id.)  The DOT is a primary source of
26 reliable job information for the Commissioner.  20 C.F.R. § 404.1566(d)(1).

1        Because the hypotheticals to the vocational expert accurately reflected plaintiff's

2  limitations, substantial evidence supports the ALJ's finding in this regard, and his findings that

3  plaintiff could do work as a file clerk or fast food worker.

4        C.  Whether the ALJ Failed to Properly Evaluate Plaintiff's Subjective

5  Complaints

6        Plaintiff contends that the ALJ failed to properly evaluate her complaints of pain

7  on her ability to work.

8        The ALJ determines whether a disability applicant is credible, and the court defers

9  to the ALJ who used the proper process and provided proper reasons.  See, e.g., Saelee v. Chater,

10  94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit

11  credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v.

12  Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

13  supported by "a specific, cogent reason for the disbelief").

14        In evaluating whether subjective complaints are credible, the ALJ should first

15  consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947

16  F.2d 341, 344 (9th Cir.1991) (en banc).  The ALJ may not find subjective complaints incredible

17  solely because objective medical evidence does not quantify them.  Id. at 345-46.  If the record

18  contains objective medical evidence of an impairment possibly expected to cause pain, the ALJ

19  then considers the nature of the alleged symptoms, including aggravating factors, medication,

20  treatment, and functional restrictions.  See id. at 345-47.  The ALJ also may consider the

21  applicant's: (1) reputation for truthfulness or prior inconsistent statements; (2) unexplained or

22  inadequately explained failure to seek treatment or to follow a prescribed course of treatment;

23  and (3) daily activities.[7]  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally

24  ───────────────

25        [7] Daily activities which consume a substantial part of an applicants day are relevant.
    "This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily
26  activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in

SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records, physician
and third party testimony about nature, severity, and effect of symptoms, and inconsistencies
between testimony and conduct, may also be relevant.  Light v. Social Security Administration,
119 F.3d 789, 792 (9th Cir. 1997).  The ALJ may rely, in part, on his or her own observations,
see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for
medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177, n.6 (9th Cir. 1990).  Absent
affirmative evidence demonstrating malingering, the reasons for rejecting applicant testimony
must be clear and convincing.  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595,
599 (9th Cir. 1999).

Although plaintiff complains that the ALJ failed to address her pain, her argument
focuses on the ALJ's failure to address the side effects of her medication which are nausea and
drowsiness.  Plaintiff's other focus of discontent is her claim that the ALJ misstated the record in
significant respects, all of which have nothing to do with pain, nausea, or drowsiness.  Because
plaintiff has made no argument regarding pain and none is evident in the record, the court will
not address it.[8]

In regard to side effects of medication, the ALJ is required to consider all of the
factors in SSR 88-13, which includes medication and its side effects, if any.  Smolen v. Chater,
80 F.3d 1273, 1284 n. 8 (9th Cir. 1996).  Here, the ALJ specifically noted, albeit not in his
credibility analysis, that plaintiff reported her response to medications was good, and that they
helped her.  (Tr. at 31-32.)  This finding is supported by the record.  For example, on August 28,

any way detract from her credibility as to her overall disability.  One does not need to be utterly
incapacitated in order to be disabled."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001)
(quotation and citation omitted).

[8] The ALJ did address plaintiff's complaints of chest pains and stomach problems by
rejecting them as severe impairments because plaintiff did not meet her burden to show they
significantly limited her ability to work over a twelve month period.  (Tr. at 31.)  He noted that
plaintiff did not report these problems when she filed her application and there was no evidence
indicating that she ever sought treatment for them.  (Id.)

1    2003, plaintiff stated that the medications were helping.  She did not report any side effects, but

2    stated that she slept well at night.  (Id. at 199.)  On March 5, 2004, plaintiff reported that "I am

3    feeling good.  My meds are working great.  My mood is improved."  Her only side effect at that

4    time was drowsiness, but plaintiff stated that she preferred it to the symptoms she had been

5    having before.  (Id. at 195.)  "Drowsiness often accompanies the taking of medication, and it

6    should not be viewed as disabling unless the record references serious functional limitations."

7    Burns v. Barnhart, 312 F.3d 113, 131 (3d Cir. 2002).  Further, allegations of side effects from

8    medication must be specific and clinically supported.  Miller v. Heckler, 770 F.2d 845 (9th Cir.

9    1985).  Plaintiff's references to the record include only one visit where plaintiff complained of

10    "mild nausea," and the aforementioned isolated report of drowsiness, which disadavantage

11    plaintiff preferred in comparison to the symptoms she had experienced previously.  (Tr. at 195,

12    197.)  Here, the ALJ did consider plaintiff's medications, but was not required to address her

13    side effects as they were de minimus.

14          In regard to the ALJ's alleged misstatements of the record, the ALJ found her

15    testimony and other statements inconsistent with the medical record.  He analyzed plaintiff's

16    credibility by noting plaintiff's report to Dr. Behniwal that she attends college, socializes with

17    friends, reads books, and does other daily activities.  (Id. at 32.)  "She arrived on time for her

18    mental health appointments, went shopping, ate out and attended movies occasionally, socialized

19    with friends, read novels/magazines every day and did drawings.  She left home every day by

20    either walking or riding public transportation."  (Id. at 33.)

21          The ALJ also noted that in seeking mental health treatment, plaintiff gave

22    inconsistent reports regarding her drug use.[9]  (Id. at 32.)  Plaintiff has variously stated that she

23    has not used drugs in years, and that she last used drugs eight months ago.  See tr. at 156 (smokes

24

_____

25       [9]  Defendant mischaracterizes the record by referring to a statement in a report, "never

26 smokes marijuana," when in actuality the record states, "alcohol - Never; Smokes Marijuana."
Def.'s Mot. at 9.  (Tr. at 156.)

1 | marijuana as of July 24, 2002), 211 (smoked marijuana two months prior to February 18, 2003),

2 | 208 (not using drugs on March 10, 2003), 269-70 (addicted to marijuana for one year but quit

3 | eight months prior to May 16, 2005 hearing), 167 (denied any current or past drug abuse on April

4 | 24, 2004).  The ALJ also explained that when plaintiff received regular treatment and was

5 | compliant, her mental health improved.  (Id. at 33.)  Further, although plaintiff claimed she had

6 | problems with anxiety, concentration, memory, keeping schedules, social situations, relating to

7 | others and following instructions, she had attended college in 2003 and 2004.  (Id.)  Further,

8 | plaintiff denied any college education.  (Id.)  The ALJ added that plaintiff sought mental health

9 | treatment on an as needed basis only, and her depressive episodes did not last for twelve months.

10 | Other than one time in January, 2003, plaintiff's GAF score was 60 and above.  Finally, the ALJ

11 | thought plaintiff's testimony at hearing was exaggerated and her candor was only fair.  (Id.)

12 | All of these reasons are supported by the record.  In regard to her claim that the

13 | ALJ has misstated the record, she first contends that the ALJ incorrectly stated that plaintiff

14 | reported she had no college education, when her hearing testimony was that plaintiff had tried to

15 | go to college, but had not been able to finish a semester.  (Id. at 251.)  In fact, plaintiff testified:

16 | Q And have you had any college or university?

17 | A I try to go to college, and I can never seem to finish a semester.

18 | Q So, you've had none?

19 | A Right.  I've completed none.

20 | (Tr. at 251.)

21 | Whether or not plaintiff had a college education is not relevant (but never

22 | finishing a semester is equivalent to no education).  Rather, the fact that she attended college

23 | indicates that her impairments were not disabling as she was able to function in this setting for

24 | purposes of work.  The fact that she did not complete coursework and failed a class is not

25 | important to the ALJ's analysis.  What is important is that she was able to relate to the public

26 | while attending college, kept a schedule, and adapted to this type of social situation.  The fact

14

1 that she got a B in French, and a B in drama after she retook it, are pertinent to her ability to

2 work, and that she is not disabled as she claims.  See tr. at 230, 246.  Plaintiff also took various

3 dance classes which she also completed and passed, evidencing her activity and interaction with

4 others.  (Id. at 246.)

5          Plaintiff further alleges that the ALJ misstated the record when he noted that she

6 only obtained mental health treatment "as needed."  In fact, plaintiff testified to this effect as the

7 ALJ also noted.  Plaintiff testified that she saw Dr. Javeed for about two years, about "every six

8 months and then in between if I needed to." (Tr. at 268-69.)  The ALJ's statement was not a

9 mischaracterization of her testimony.  Plaintiff claims she was seen 24 times over a period from

10 February 18, 2003 through September, 2004, which approximates to more than once a month,

11 citing tr. 190-212.  Plaintiff may be correct, however, she claims disability since August 15,

12 2002, despite treatment records showing regular visits only between February, 2003 and

13 September, 2004. (Tr. at 94.)  Many of these records indicate that plaintiff was doing well with

14 medications which were improving her condition.  (Tr. at 212, 208, 201, 199, 196, 195, 191.)  On

15 February 2, 2003, plaintiff's affect was cheerful.  Memory was intact, and judgment was good.

16 (Id. at 197.)  On March 5, 2004, after plaintiff reported she was feeling good, the medication was

17 working, and her mood was improved, the practitioner noted that plaintiff was verbally

18 responsive, pleasant, cooperative, coherent, and had good cognitive processes, and good memory,

19 concentration, judgment, and insight.  (Id. at 195.)  Similar notes were repeated on other visits.

20 (Id. at 194, 197.)  Further, as pointed out by defendant, plaintiff reported on March 10, 2003, that

21 she was working full time on a temp job as a teacher's aide, and "does a better job at it than

22 'normal' people." (Id. at 208.)  This statement was made despite plaintiff's alleged onset of

23 disability on August 15, 2002.

24          Plaintiff also claims that the ALJ improperly summarized her GAF scores as 60 or

25 higher except for January, 2003.  She asserts correctly that her score was also 50 in June, 2003.

26 (Tr. at 201.)  The ALJ will not be faulted for failing to mention one other low GAF score.  The

1  majority of GAF scores are more reflective of plaintiff's overall condition, and they are

2  consistently much higher.  For example, on April 24, 2004, plaintiff's GAF score was 63.  (<u>Id.</u> at

3  169.)  On February 2, 2003, plaintiff's GAF was 70, and her GAF in the past year was reported

4  to be 65.  (Tr. at 197.)  On October 1, 2003, plaintiff's GAF was 65 and her GAF in the past year

5  was 60.  (Tr. at 198.)

6          Plaintiff's final argument with respect to the credibility analysis is the ALJ's

7  interpretation of her daily activities which she claims he misstated.  She points to her testimony

8  wherein she stated she goes shopping once a week, but that she needs her social worker with her

9  when she shops, which the ALJ failed to mention.  (<u>Id.</u> at 33, 263.)  Contrary to the ALJ's

10  statement that plaintiff goes to movies occasionally, she stated in her daily activities

11  questionnaire that she only goes to movies or to a restaurant every three to four months, and only

12  when invited by "one of my trusted family members."  (<u>Id.</u> at 121.)  In this report, plaintiff points

13  out that she stated that she is less able to cope with social situations and is more and more afraid

14  of people generally.  (<u>Id.</u>)  Although plaintiff concedes that she reads daily, she stated that the

15  record reflects that she only remembers "bits and pieces," and has to "keep looking at the writing

16  to jog my memory."  (<u>Id.</u> at 120.)

17          All of these references by plaintiff are to statements made by her in support of her

18  disability applications.  Although plaintiff reported distractions, fear, and loss of concentration in

19  some of her activities, Dr. Behniwal's assessment was that plaintiff socializes with her friends,

20  related well to himself and his staff, was able to concentrate and read a book, and can perform

21  her daily activities in a timely manner.  (<u>Id.</u> at 167.)  Plaintiff regularly checked in for her medical

22  appointments on time.  (Tr. at 191-95, 197-98.)  In addition to the testimony mentioned above,

23  plaintiff also testified that she does all kinds of chores around the house on a regular basis,

24  including sweeping, vacuuming, dusting, laundry, cleaning bathrooms, shopping, and making the

25  bed.  (<u>Id.</u> at 263-64.)  She also visits friends or family at least once a day, and goes for a walk

26  twice a day.  (<u>Id.</u> at 264.)  She also attends Narcotics Anonymous meetings once a week due to

1   previous addiction to marijuana for a year.  (Id. at 269.)  These other references in the record tend

2   to refute plaintiff's own statements in support of her disability claim.  An ALJ may disregard a

3   claimant's self-serving statements if they are not supported by the objective evidence.  Hudson v.

4   Bowen, 849 F.2d 433, 434 (9th Cir. 1988).  The ALJ is accorded great weight in his

5   determination of credibility.  Id.  See also Brawner v. Secretary of Health and Human Services,

6   839 F.2d 432, 433 (9th Cir. 1988).  Furthermore, this court gives deference to the ALJ's

7   assessment of plaintiff's testimony, and he opined that it appeared to be exaggerated and that her

8   candor was only fair.  (Tr. at 33.)  "Credibility determinations are the province of the ALJ."

9   Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir.1995).  In this regard, questions of credibility

10  and resolutions of conflicts in the testimony are functions solely of the [Commissioner].  See

11  Yuckert v. Bowen, 841 F.2d 303, 307 (9th Cir. 1988); Sample v. Schweiker, 694 F.2d 639, 642

12  (9th Cir. 1982)."  Morgan v. Apfel, 169 F. 3d at 599.  The ALJ properly analyzed the evidence in

13  relation to the appropriate factors required by the Bunnell line of cases.

14  CONCLUSION

15          In sum, the court finds the ALJ's assessment is fully supported by substantial

16  evidence in the record or based on the proper legal standards.  Accordingly, plaintiff's Motion for

17  Summary Judgment is DENIED, the Commissioner's Cross Motion for Summary Judgment is

18  GRANTED, and the Clerk is directed to enter Judgment for the Commissioner.

19  DATED: 02/28/08

20                                              /s/ Gregory G. Hollows

21                                              _____
                                                GREGORY G. HOLLOWS
                                                U.S. MAGISTRATE JUDGE
22  GGH/076
    Combs2530.ss.wpd
23

24

25

26